

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-17-00359-CV

———————————————

EDGEFIELD HOLDINGS, LLC AS ASSIGNEE OF REGIONS BANK, Appellant

V.

KENNETH J. GILBERT, HELEN K. GILBERT, CHANDLER ESTATES, LTD.,
AND PARKER COUNTY REAL ESTATE INVESTMENTS, INC., Appellees

---

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court No. CV16-0784

---

Before Meier, Gabriel, and Pittman, JJ.
Opinion by Justice Pittman

# MEMORANDUM OPINION

## INTRODUCTION

Twenty-one years ago, the United States Supreme Court made it abundantly clear that "ERISA's[1] pension plan anti-alienation provision is mandatory and contains **only two** explicit exceptions, . . . which are not subject to judicial expansion." *Boggs v. Boggs*, 520 U.S. 833, 851, 117 S. Ct. 1754, 1765 (1997) (citing 29 U.S.C. § 1056(d)(2), (d)(3)(A)) (emphasis added). Here, the trial court granted summary judgment on that issue in favor of Appellees Kenneth J. Gilbert; Helen K. Gilbert (Kay); Chandler Estates, Ltd.; and Parker County Real Estate Investments, Inc. (collectively, the Gilbert parties).

Despite the Supreme Court's holding, in this appeal, Appellant Edgefield Holdings, LLC, as assignee of Regions Bank, argues that the trial court erred by concluding that the pension plan at issue is not subject to execution. As part of its appeal, Edgefield challenges the trial court's subject-matter jurisdiction, the court's evidentiary rulings, and the court's granting of summary judgment. Because we hold that the trial court had jurisdiction to render summary judgment, that Edgefield did not show harm from the trial court's evidentiary rulings, and that Edgefield has not shown that the trial court erred by granting summary judgment, we affirm.

---

[1]ERISA is the federal "Employee Retirement Income Security Act," the purposes of which includes protecting "the interests of participants in private pension plans and their beneficiaries." 29 U.S.C.A. § 1001 (West 2008).

2

## BACKGROUND

**I.  Edgefield Sues the Gilbert Parties as Judgment Creditor and the Gilbert Parties Counterclaim.**

In June 2016, Edgefield filed this suit against the Gilbert parties in the 43rd district court of Parker County, Texas to recover funds Kenneth had transferred to and from accounts at EECU Credit Union (EECU). Edgefield claimed entitlement to those assets as a judgment creditor. In its petition, Edgefield alleged that in 2010, Regions Bank obtained a judgment against Kenneth for $1,972,645.58, plus attorney's fees and post-judgment interest, and that in March 2016, Regions Bank assigned that judgment to Edgefield.

Edgefield further alleged that in January 2016, for no value in return, Kenneth transferred $250,000, his earned commissions from his employer, to an account held in the name of Chandler Estates. The petition also stated that on April 28, 2016, Edgefield served EECU with a notice of subpoena requesting documents relating to Kenneth's account, and it served Kenneth's attorney with a copy of that notice on May 2, 2016. In addition, Edgefield alleged that after service of that subpoena on Kenneth through his attorney, Kenneth then made the following transfers:

(1)  a May 4, 2016 transfer of $25,000 to Kay by Kenneth out of Chandler Estates's account—for which Kenneth is a signatory—at EECU; and

(2)  a May 5, 2016 wire transfer of $225,000 by Kenneth out of Chandler Estates's EECU account.

In the lawsuit, Edgefield sought, among other relief, declarations that the transfers were void, avoidance of the transfers, and attachment and execution of the transferred assets. Finally, Edgefield asserted that Parker County Real Estate Investments was the general partner of Chandler Estates and was therefore also liable.

The Gilbert parties answered, and by amended answer, Kenneth filed a counterclaim for wrongful garnishment. Kenneth based the counterclaim on an application for writ of garnishment that Edgefield had earlier filed in a different trial court in Parker County, Texas, the 415th district court of Parker County, against UBS AG and UBS Financial Services, Inc. as garnishees (collectively, UBS) and against Kenneth as judgment debtor. In his wrongful garnishment counterclaim, Kenneth claimed that Edgefield had garnished funds held by UBS despite knowing the funds were exempt from execution under Texas Property Code Section 42.0021. *See* Tex. Prop. Code Ann. § 42.0021 (West 2014).

The Gilbert parties then filed a second amended answer and counterclaim, adding a claim for declaratory judgment on behalf of all the Gilbert parties. They alleged that Edgefield had attempted to garnish an Individual Retirement Account (IRA) and a defined benefit pension plan (which, in later pleadings, they identified as an account held in the name of the Gilbert Real Estate Brokers Defined Benefit Pension Plan (the Pension Plan)), both held at UBS and both of which they alleged were exempt from execution.

4

**II.    The Gilbert Parties File Motions for Summary Judgment and Edgefield Responds with Various Filings**.

On August 3, 2017, Kenneth filed a traditional motion for partial summary judgment[2] seeking a declaration that (1) the IRA and (2) the Pension Plan were protected by ERISA.  Kenneth attached to his motion the answer UBS had filed in Edgefield's garnishment suit in the 415th district court.  UBS stated in the answer that it held an IRA in Kenneth's name with a balance of $181,840.76 and a resource management account in the name of Kenneth and Kay W. Gilbert in the amount of $667.98.  In the answer, UBS warned Edgefield that the IRA account may be exempt from garnishment.

A few days after Kenneth filed his August 3, 2017 motion for summary judgment, Edgefield attempted to remove this case to the United States District Court for the Northern District of Texas, Fort Worth Division, based on the Gilbert parties' counterclaim for a declaration that ERISA exempted the Pension Plan from execution.  On August 24, 2017, the federal district court granted the parties' agreed motion to remand the case back to the 43rd district court.

On August 29, 2017—five days after the federal court remanded the case back to the 43rd district court—Edgefield filed a plea to the jurisdiction and a motion to

---

[2]The various Gilbert parties filed a total of three summary judgment motions, which we refer to collectively as the Motions for Summary Judgment.

dismiss under Rule 91a[3] arguing that federal courts had exclusive jurisdiction over Kenneth's requested declaratory relief. *See* Tex. R. Civ. P. 91a. Thus, it argued, because the allegations in the Gilbert parties' petition, taken as true, did not entitle them to the relief they sought in state court, their counterclaim had no arguable basis in law.

On the same date, the Gilbert parties filed a third amended answer and counterclaim. In that pleading, they "sue[d Edgefield] for the wrongful garnishment of UBS as the holder of the assets of both an [IRA] Account and the Pension Plan." They alleged that UBS held funds for the benefit of Kenneth and Kay in the Pension Plan account and that the assets in the account were exempt from execution under Texas Property Code section 42.0021 and ERISA. They further sought a declaration that the Pension Plan is exempt from execution under ERISA and the Texas Property Code, "notwithstanding [Edgefield's] assertion that transfers into the Pension Plan account are recoverable as fraudulent transfers."[4]

---

[3]Though styled as two separate motions combined into one document, the motion had only one arguments section and did not distinguish between Rule 91a grounds for dismissal and plea to the jurisdiction grounds for dismissal, except for a request at the end for attorney's fees under Rule 91a. We refer to this combined motion as the Motion to Dismiss.

[4]While Kenneth's wrongful garnishment claim still challenged the alleged attempted garnishment of both the IRA and the Pension Plan, in this amended pleading the Gilbert parties no longer asked for declaratory relief relating to the IRA. This omission may have been a drafting error, given that the Gilbert parties still challenged the garnishment of the IRA account and that when they pled for declaratory relief, they asked twice for essentially the same declaration regarding the

6

On August 31, 2017, Kenneth filed another motion for partial summary judgment seeking a declaration that the IRA and Pension Plan were exempt from execution under ERISA. That same day, the Gilbert parties filed a joint motion for traditional and no-evidence summary judgment. In the traditional motion, they asserted that Edgefield had filed its garnishment action to illegally garnish the IRA and the Pension Plan. In the no-evidence motion, the Gilbert parties asserted that they were entitled to summary judgment on Edgefield's claims because Edgefield had no evidence of several elements of its claims.

On September 18, 2017, Edgefield nonsuited its claims against the Gilbert parties.

Both the Gilbert parties and Edgefield filed briefing with the trial court arguing the merits of Edgefield's Motion to Dismiss, and Edgefield filed a response to the Gilbert parties' Motions for Summary Judgment and a supplemental Motion to Dismiss. With its summary judgment response, Edgefield attached a copy of an agreed judgment between Edgefield and UBS in the garnishment proceeding in the 415th district court, in which Edgefield took nothing on its claims against UBS and

---

Pension Plan. While Edgefield mentions several times in its brief that the Gilbert parties omitted its claim for a declaration regarding the IRA from its third amended petition, it does so in order to argue that the Gilbert parties cannot rely on the garnishment proceeding and resulting freezing of the IRA to show a justiciable controversy. At no point does it complain that the trial court granted summary judgment on an unpled cause of action. We therefore do not consider whether it was error for the trial court to do so.

UBS recovered from Edgefield $667.98 in attorney's fees from Kenneth's non-IRA account held by UBS and garnished by Edgefield.

The Gilbert parties filed objections to all the evidence attached to Edgefield's response to their summary judgment motions. The trial court sustained the objections and struck the evidence.

The trial court granted each of the Motions for Summary Judgment on each of the grounds set out in the motions and found that the funds in the IRA and the Pension Plan were exempt under ERISA's anti-alienation provision from seizure by any creditor. The Gilbert parties then nonsuited their claim for wrongful garnishment and for attorney's fees, the only remaining claims pending in the case. The trial court signed a final judgment incorporating its previous orders granting the Motions for Summary Judgment and declaring that the IRA and the Pension Plan were exempt from execution under ERISA. Edgefield now appeals.

## DISCUSSION

### I. The Trial Court Correctly Denied Edgefield's Motion to Dismiss.

In Edgefield's first issue, it argues that the trial court erred in denying its Motion to Dismiss because (1) there was no justiciable issue before the trial court and (2) only a federal court has subject-matter jurisdiction to render judgment in favor of the Gilbert parties.

8

## A. We Apply De Novo Review to the Trial Court's Ruling on the Rule 91a Motion to Dismiss.

A motion under Texas Rule of Civil Procedure 91a may seek dismissal of a cause of action on the grounds that it has no basis in law or in fact. Tex. R. Civ. P. 91a. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* Like a plea to the jurisdiction challenging a plaintiff's pleadings, a Rule 91a motion to dismiss may be based on a party's failure to allege facts demonstrating the trial court's subject-matter jurisdiction over the party's claim. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 724–25 (Tex. 2016). "Whether a pleader has alleged facts affirmatively demonstrating the existence of subject-matter jurisdiction is a question of law reviewed *de novo*." *Id.* at 725. Whether reviewing a plea to the jurisdiction challenging the pleadings or a Rule 91a motion challenging the trial court's subject-matter jurisdiction, we liberally construe the pleadings to determine whether they contain sufficient facts to demonstrate jurisdiction. *Id.*; *see Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A plea to the jurisdiction may also challenge the existence of jurisdictional facts. *Mission Consol. I.S.D. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). In that case, "a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Id.* The party filing the plea has the burden to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Id.*

9

If it does, the opposing party must then show that a disputed material fact exists regarding the jurisdictional issue. *Id.* "[W]e take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in its favor." *Tex. Dep't of Criminal Justice-Cmty. Justice Assistance Div. v. Campos*, 384 S.W.3d 810, 814 n.2 (Tex. 2012). "[W]hether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Miranda*, 133 S.W.3d at 226.

### B. The Gilbert Parties Alleged a Justiciable Controversy.

Edgefield first argues in this appeal that the trial court "erred by ruling on, let alone granting, [the Gilbert parties'] three Motions for Summary Judgment because there was no justiciable issue[] before the Court." Specifically, Edgefield contends that it has filed no action against the Pension Plan and that by the Gilbert parties asking the trial court to issue a declaratory judgment that the Pension Plan funds are exempt from execution, the Gilbert parties are seeking an impermissible advisory opinion. This contention is erroneous.

"The stated purpose of the Declaratory Judgments Act is 'to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations.'" *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (quoting Tex. Civ. Prac. & Rem. Code § 37.002(b) (Vernon 1986)). "A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought," and therefore

"there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (citations and internal quotation marks omitted).

Although Edgefield contends the Gilbert parties are seeking an advisory opinion because it has taken no action against the Pension Plan and concludes therefore that there is no controversy over the Pension Plan's exemption from execution, it is incorrect. "A declaratory action need not concern a present lawsuit but may include 'threatened litigation in the immediate future that seems unavoidable.'" *Monk v. Pomberg*, 263 S.W.3d 199, 207 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted). Here, Edgefield is actively attempting to execute on Kenneth's assets, and Kenneth's assets include the Pension Plan. In its pursuit of Kenneth's assets, Edgefield filed an application for a writ of garnishment against UBS—where the Pension Plan is held—and the fraudulent transfer claims in this case. Indeed, Edgefield's actions have already caused a different retirement account (the IRA) to be frozen by UBS. Further, the Gilbert parties alleged that Edgefield has expressed in conversations with the Gilbert parties its position that the Pension Plan is not exempt (a position Edgefield subsequently took below in response to the Gilbert parties' counterclaims).

Without question, the Gilbert parties alleged "a real and substantial controversy involving genuine conflict of tangible interests" and thus alleged a justiciable controversy, despite Edgefield's not yet executing on funds in the Pension Plan. *See*

11

*id.*; *Bonham State Bank*, 907 S.W.2d at 467. We overrule this part of Edgefield's first issue.

### C. The Trial Court Has Jurisdiction over The Gilbert Parties' ERISA-Based Counterclaims.

#### 1. We apply different scopes of review to the Motion to Dismiss.

In the second part of its first issue, Edgefield asserts that only a federal court has subject-matter jurisdiction to render judgment in favor of the Gilbert parties. Importantly, before we address the merits of Edgefield's contention, we must first address the two different scopes of review applicable to Edgefield's Motion to Dismiss. In ruling on a Rule 91a motion, the trial court does not consider evidence but "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by [Texas] Rule [of Civil Procedure] 59." *AC Interests, L.P. v. Tex. Comm'n on Envt'l Quality*, 543 S.W.3d 703, 706 (Tex. 2018) (quoting Tex. R. Civ. P. 91a). Likewise, in ruling on a plea to the jurisdiction challenging the pleadings, the trial court looks at the pleadings. *Miranda*, 133 S.W.3d at 226. If, however, a movant challenges the existence of jurisdictional facts, the trial court must consider relevant jurisdictional evidence provided by the movant and, if the movant's evidence negates jurisdiction, consider evidence produced by the nonmovant. *Garcia*, 372 S.W.3d at 635.

In this case, Edgefield's Motion to Dismiss did not specify whether its plea to the jurisdiction challenged a failure to plead jurisdictional facts or the existence of

jurisdictional facts. However, in its Motion to Dismiss, Edgefield attached and referenced evidence other than what would be allowed under Rule 59, and argued that its evidence established that only a federal court had jurisdiction over the Gilbert parties' claims. For the trial court to consider that evidence, Edgefield had to be challenging the existence of jurisdictional facts. *Id.* Accordingly, for purposes of reviewing the trial court's ruling on the Rule 91a part of the motion, we look to see if the Gilbert parties pled a cause of action with an arguable basis in law—specifically here, whether they pled facts showing the trial court's jurisdiction—and, for purposes of reviewing the trial court's ruling on the plea to the jurisdiction, we look to see if Edgefield negated the existence of jurisdictional facts.

### 2. ERISA authorizes the Gilbert parties' declaratory judgment claim.

Despite Edgefield's protests that only a federal court has jurisdiction to decide this controversy, state courts routinely consider whether a creditor may garnish funds held by a plan arising under ERISA. *See, e.g.*, *Shah v. Baloch*, 418 P.3d 902, 903–04 (Ariz. Ct. App. 2017). And assuming that the Gilbert parties' declaratory judgment action is a "civil action[] under [ERISA]"—as both sides do in their briefs—it is authorized under Section 1132. In their competing arguments as to whether the state court has jurisdiction, the subsection of ERISA that both parties rely on is 29 U.S.C. § 1132(e)(1), which reads

> **Except for actions under subsection (a)(1)(B) of this section**, the district courts of the United States shall have exclusive jurisdiction of

13

civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. **State courts** of competent jurisdiction and district courts of the United States **shall have concurrent jurisdiction of actions under paragraphs [(a)](1)(B)** and (7).[5]

29 U.S.C.A. § 1132(e)(1) (West 2009) (emphasis added).

The action authorized under subsection (a)(1)(B), for which state courts have concurrent jurisdiction, is one brought by a participant or beneficiary of a plan "[1] to recover benefits due to [the participant or beneficiary] under the terms of [the] plan, [2] to enforce [the participant or beneficiary's] rights under the terms of the plan, or [3] to clarify [the participant or beneficiary's] rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B); *cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149 (1992) ("When the words of a statute are unambiguous, then, the first canon is the last; judicial inquiry is complete." (citations and internal quotation marks omitted)).

Thus, for purposes of determining whether the Gilbert parties alleged sufficient facts to show the trial court's jurisdiction, the question is whether the Gilbert parties alleged facts showing that their declaratory judgment action is authorized by subsection (a)(1)(B). Edgefield does not contend that the Gilbert parties failed to plead facts showing that Kenneth is a participant or beneficiary or that the Pension

---

[5]Subsection (a)(7) authorizes an action by a state to enforce compliance with a "qualified medical child support order," and thus is inapplicable to the Gilbert parties' counterclaims. *See* 29 U.S.C.A. § 1132(a)(7).

14

Plan is a "plan" for purposes of subsection (a)(1)(B). By the Gilbert parties' declaratory judgment counterclaim, they seek to enforce Kenneth's rights under the terms of the Pension Plan or clarify his rights to future benefits. The Gilbert parties therefore pled sufficient facts to show that the declaratory judgment action is a civil action under subsection (a)(1)(B).

Edgefield counters that the declaratory judgment action was not one authorized under Section 1132(a)(1)(B) and is instead the kind of action authorized under Section 1132(a)(3), and therefore the declaratory judgment must be brought in federal court. *See id.* § 1132(a)(3) (authorizing an action by a participant to enjoin any act violating the subchapter or terms of a plan and "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan"). But by bringing this declaratory judgment action, the Gilbert parties asked for "a declaration of rights, status, or other legal relations" under the Pension Plan and ERISA, and they thereby sought to enforce Kenneth's rights under the plan and clarify Kenneth's rights to future benefits under the plan. *See id.* § 1132(a)(1)(B); Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2014).

Edgefield argues, however, that the Gilbert parties are not seeking to enforce or clarify Kenneth's rights under the terms of the Pension Plan because they have not sued the trustee or administrator. Other than the text of Section 1132(a)(1)(B), Edgefield cited no law in its Motion to Dismiss or on appeal for the proposition that a claim to enforce or clarify rights under Section 1132(a)(1)(B) that does not seek to

recover benefits owed under a plan, may be brought only against a plan's trustee or administrator. *See* Tex. R. App. P. 38.1(i) (briefs must contain relevant cites to authority for arguments made). The statute's plain language contains no such restriction. *Cf. Knapp v. Cardinale*, 963 F. Supp. 2d 928, 933 (N.D. Cal. 2013) (holding that a state court had the power to determine claim brought by plan participant to determine whether plan at issue was an ERISA plan and whether an account levied upon contained funds exempt from execution by creditor).

As for Edgefield's plea to the jurisdiction, it produced (1) the Gilbert parties request for admissions in which they asked Edgefield to admit that the Pension Plan is subject to ERISA and (2) a document showing that Kenneth is an active participant in the Pension Plan. By supplemental plea, Edgefield also attached an affidavit from Donald Stark of the Loren D. Stark Company, which drafted the plan document creating and governing the Pension Plan. Edgefield asserted that with this affidavit, the Gilbert parties "admit[ed] that the [Pension Plan] is subject to ERISA." None of this evidence shows that the Gilbert parties' claim is not a claim to clarify or enforce Kenneth's rights under the Pension Plan. Accordingly, the trial court did not err by denying the plea to the jurisdiction. *See Garcia*, 372 S.W.3d at 635. We overrule the remainder of Edgefield's first issue.

## II. The Trial Court Had Jurisdiction to Grant Summary Judgment.

Edgefield's second issue challenges the trial court's grant of summary judgment for the Gilbert parties on the same grounds that it challenged the trial court's denial of

its Motion to Dismiss, asserting that the trial court lacked jurisdiction to grant summary judgment for the Gilbert parties because: (1) there was no justiciable controversy and (2) federal courts have exclusive jurisdiction over a declaratory judgment action addressing the Pension Plan. For the reasons discussed herein, because a justiciable controversy exists and the 43rd district court had jurisdiction over the declaratory judgment action, we overrule Edgefield's second issue.

### III. The Trial Court Did Not Err in Granting Summary Judgment for the Gilbert Parties on the Basis that the Pension Plan Is Exempt.

In its fourth issue, Edgefield argues that the trial court erred in granting the Gilbert parties' three motions for summary judgment and declaring that the Pension Plan was exempt from execution because Edgefield raised a genuine issue of material fact as to whether the Pension Plan was exempt.

Edgefield makes two main arguments under this issue. First, the Pension Plan is a separate and distinct legal entity under federal law but is not a party to this suit, and therefore this court does not have the ability to adjudicate issues regarding its legal status. Second, the Gilbert parties did not comply with the terms of the Pension Plan, creating a genuine issue of material fact as to its exempt status. Both of these arguments are without merit.

#### A. Edgefield Did Not Preserve its Complaint that the Pension Plan is a Necessary Party.

Edgefield argues that "for this Court to enter an order regarding the rights of a separate entity, that entity must be made a party t[o] this suit." Edgefield cites no

17

authority for its proposition that the Pension Plan must be a party to the declaratory judgment action. *See* Tex. R. App. P. 38.1(i). However, Edgefield's argument fails for two reasons. First, a trial court's declaration "does not prejudice the rights of a person not a party to the proceeding." Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 2014); *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004). Thus, a declaration regarding the Pension Plan as between the Gilbert parties and Edgefield does not prejudice any rights of the Pension Plan. Second, even if the Pension Plan were a necessary party, Edgefield did not properly object to the Pension Plan's absence in the trial court, raising the issue only in its response to the Gilbert parties' Motions for Summary Judgment. *See Khalilnia v. Fed. Home Loan Mortg. Corp.*, No. 01-12-00573-CV, 2013 WL 1183311, at *4 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, pet. denied) (mem. op.) (noting that "[a] party must object to the absence of a necessary party either by a verified plea in abatement, or, if the error is apparent on the face of the petition, by special exception" and that "[f]ailure to do so waives any defect in the parties"); *see also Feuerbacher v. Fed. Nat'l Mortgage Ass'n*, No. 05-16-01117-CV, 2017 WL 5589601, at *2 (Tex. App.—Dallas Nov. 21, 2017, no pet.) (mem. op.) (holding that raising the failure to join an indispensable party only in a response to a motion for summary judgment does not preserve the issue for review). It therefore failed to preserve its complaint for review, and we overrule this part of Edgefield's fourth issue.

**B.** **Edgefield Did Not Raise a Genuine Issue of Material Fact About Whether the Pension Plan Funds Are Exempt from Execution.**

Edgefield makes several arguments for why the evidence raised a genuine question of material fact precluding summary judgment, each without merit.

Edgefield asserts that one of its exhibits, struck (erroneously, it argues) by the trial court, was a copy of a plan document for the Pension Plan that was different from the plan document the Gilbert parties included with their summary judgment motion. The copy of the plan document that created and governs the Pension Plan, which the Gilbert parties attached to their summary judgment motion, had been produced by Donald Stark of Loren D. Stark Company and was accompanied by his affidavit. This plan document had been signed and adopted by Kay and Kenneth Gilbert. On the other hand, the copy attached to Edgefield's summary judgment response is a copy of a proposed amended plan document, with changes made in response to the federal Economic Growth and Tax Relief Reconciliation Act of 2001. *See* Pub. L. No. 107-16, 115 Stat. 38. According to the affidavit of Edgefield's attorney accompanying this plan document, the copy was produced by Loren D. Stark Company in response to a subpoena. This copy, apparently drafted in 2010, is unexecuted and contains no indication it was ever adopted. Nevertheless, Edgefield argues that the two versions of the plan document define "Employer" differently, and that this difference creates a genuine issue of material fact. It does not, however, say what that material fact issue is. It certainly does not explain how this unexecuted,

19

unadopted plan document creates a genuine issue of material fact on the controlling issue—whether the funds from Kenneth's income, once deposited into the Pension Plan, can be reached by creditors.

Edgefield's primary argument under this issue revolves around alleged violations of the plan document. Edgefield contends that a claim under Section 1132(a)(1)(B) is the assertion of a contractual right, and therefore this court must look to the plan documents. Edgefield then lists a number of ways that it contends that the Gilbert parties violated the terms of both the plan document relied on by the Gilbert parties and the subsequent unexecuted plan document. It asserts that its summary judgment evidence showed that Kenneth's employer deposited his income into accounts held not in Kenneth's name, but in the name of Chandler Estates and another entity, and that Kenneth transferred the income from there into the Pension Plan. Edgefield argues that this arrangement violated various parts of both versions of the plan document, and it contends that it therefore raised a genuine issue of fact as to whether the Pension Plan "constituted a retirement plan, the type of which [the Gilbert parties] allege is exempt from execution."[6]

Even assuming that Edgefield is correct that the manner in which the funds were transferred into the Pension Plan violated the terms of the plan document,

_____

[6]Edgefield does not argue that based on the terms of the plan document, the Pension Plan is not a plan subject to ERISA and to which the anti-alienation provision applies. It argues only that the Gilbert parties' failure to comply with the plan's terms make the plan's funds available to creditors.

20

Edgefield failed to raise an issue of material fact about whether the funds are protected from execution. Edgefield does not explain how a failure to comply with the plan's terms after creation of the plan means that no plan exists, nor does it cite any authority for that proposition. Edgefield does not deny that a plan document was drawn up and executed creating the Pension Plan. Edgefield does not deny that the funds came from Kenneth's income and ended up in the Pension Plan. Both versions of the plan document contain an anti-alienation clause. Edgefield acknowledges that under either version of the plan document, the Pension Plan is subject to ERISA. Moreover, even for employee malfeasance or criminal activity, ERISA provides only two exceptions[7] to its anti-alienation provision, neither of which is applicable here. *Boggs*, 520 U.S. at 851, 117 S. Ct. at 1765; *see also* 29 U.S.C.A. § 1056(d)(2) (anti-alienation provision does not apply to an assignment or alienation of benefits executed before September 2, 1974); (d)(3)(A) (West 2009) (anti-alienation provision does not apply to qualified domestic relations orders); *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376, 110 S. Ct. 680, 687 (1990) (declining to approve of an equitable exception to ERISA's prohibition on the assignment or alienation of pension benefits); *Matter of Baker*, 114 F.3d 636, 640 (7th Cir. 1997) (holding violations of the plan's terms and violations of ERISA by plan trustee and participant did not

---

[7]The Fifth Circuit and several other federal courts of appeals have held that the Mandatory Victim Restitution Act of 1996 created another exception for a fine imposed under that act. *United States v. DeCay*, 620 F.3d 534, 540–41 (5th Cir. 2010). This exception also does not apply to Edgefield.

make ERISA inapplicable to allow a creditor to reach the participant's assets in the plan because "[i]nequitable or not . . . the anti-alienation clause governs. There is no 'equity' exception to § 1056(d)(1) of ERISA").

Edgefield cites no case or other authority for its argument that the funds in the Pension Plan are subject to execution because they were not deposited in the Pension Plan in the manner called for under the plan document. Nor does it explain how (or even argue that) the Gilbert parties' alleged failures to comply with the plan document's terms or ERISA[8] mean that the Pension Plan was not created or that it is not a plan subject to ERISA. *See Guidry*, 493 U.S. at 371, 110 S. Ct. at 685 ("ERISA erects a general bar to the garnishment of pension benefits from plans covered by the Act."); *Shah*, 418 P.3d at 903–04 ("[E]ven a fraudulent transfer of funds by a participant into his or her qualified plan may not be recovered unless a statutory exception applies"). Edgefield acknowledges elsewhere in its brief that a plan subject to ERISA exists. As for this court, we have no authority to expand ERISA to create a new exception to its anti-alienation provision. *Cf. U.S. Fleet Servs. v. City of Fort Worth*, 141 F. Supp. 2d 631, 644 (N.D. Tex. 2001) (Mahon, J.) (refusing to engage in an exercise of "legal jingoism" requiring the court to insert words into a law or rule to arrive at a particular party's interpretation).

Therefore, we overrule the remainder of Edgefield's fourth issue.

---

[8]Edgefield argues that the Gilbert parties failed to comply with ERISA, but other than alleged violations of the plan document, it does not say how.

## IV.     Edgefield Showed No Harm from the Exclusion of its Evidence.

In its third issue, Edgefield contends that the trial court abused its discretion by sustaining the Gilbert parties' objections to its evidence.

Edgefield acknowledges that an appellate court's reversal of a trial court's evidentiary ruling turns on whether the ruling was harmful.  Edgefield argues that the trial court's evidentiary rulings were harmful because the court excluded *all* of Edgefield's evidence.  But, if none of the excluded evidence was controlling of a material issue, the exclusion was not harmful.  *See Bedford v. Moore*, 166 S.W.3d 454, 465 (Tex. App.—Fort Worth 2005, no pet.) ("Exclusion of evidence is harmful only if the evidence is controlling on a material issue and is not cumulative.").  Save one exhibit, discussed next, Edgefield does not argue how any of the excluded evidence, such as copies of the Gilbert parties' discovery requests, related to a material issue.  And based on our review of the evidence, we do not see how the exclusion of the evidence caused the rendition of an improper judgment.  *See* Tex. R. App. P. 44.1.  We therefore overrule Edgefield's third issue as to all but one of the excluded exhibits.  *See Manon v. Solis*, 142 S.W.3d 380, 393 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ("Appellant fails to explain, however, how the excluded testimony is controlling on a material issue in the case and would not have been cumulative of other admitted evidence."); *Krell v. Smith*, No. 02-02-00417-CV, 2003 WL 22147556, at *1 (Tex. App.—Fort Worth Sept. 18, 2003, no pet.) (mem. op.) (holding that by failing to argue that she suffered harm as a result of the trial court's exclusion of

23

evidence, the appellant failed to meet her burden of proof by presenting grounds for reversal on appeal).

The only evidence for which Edgefield makes a harm argument is the trial court's exclusion of the copy of the unexecuted plan document. Edgefield argues that the trial court's exclusion was harmful because it shows that the original, adopted plan document included by the Gilbert parties with their summary judgment motion "may not even be valid because another set of unique plan documents exist." We do not agree.

As the Gilbert parties state in their brief, Edgefield never explains how an unexecuted copy of a plan, with no evidence in the record that the version of the plan was ever adopted, gives rise to an issue of material fact regarding the legal effect of the anti-alienation clause contained in the adopted plan document. Edgefield does not deny that, whichever plan is in effect, it is subject to ERISA. Both plans contain an anti-alienation clause. In either case, Edgefield acknowledged below and on appeal that (1) a plan exists and (2) the plan is subject to ERISA. These two facts were not challenged by the existence of the second plan document, even if it had been executed, which the record does not support. Edgefield has therefore not shown harm by the trial court's exclusion of the unexecuted plan document. *See* Tex. R. App. P. 44.1. We overrule the remainder of Edgefield's third issue.

## <u>CONCLUSION</u>

Having overruled Edgefield's four issues, we affirm the trial court's judgment.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered: September 20, 2018